Battle,
 

 J. It cannot be doubted, we think, that the defendant claimed under the lessors of the plaintiff. His lot is described in his. own title deeds, to be “ that lot of land situated in the old town of Beaufort, and distinguished in the plan of said town, by No. Ill, (except forty-two feet on the North part,)” &c., and it does not appear that the lot had ever been claimed, otherwise than under the ’Commissioners to whom the two hundred acres of land upon which the .old town was, had been .conveyed, for the purpose,of •being laid off into lots, and sold. The defendant then was ■estopped to deny their title, and the .only question was, whether the Western limit i®f his lot was the mathematical line from C to A ? Or was the line of high water mark, .between the main land and Piver’s island.? The defendant
 
 *238
 
 contends for the latter line, as his true boundary, alleging, that, when the .lot was originally laid off and sold, his Western line, though not calling for the thoroughfare, was in fact co-terminous with the high water mark of it, and he was, therefore, according to a well .settled principle of law, entitled to the gradual accretion or alluvion made by the recession of the water. Were the allegations supported
 
 hj
 
 the proof, an interesting question would arise, whether the doctrine of alluvion applies to any case where a water boundary is not called for, though the course and distance, called for, may have been conterminous with it ? We do not feel at liberty to decide the question, because we are clearly of ■opinion that the evidence given on the part of the defendant, does not raise it. That evidence consists of the map of the survey of the town of Beaufort, made by Jonathan Price, in the year 1816, and the testimony of James Davis, a former owner of the lot, and his son Joel PI. Davis. Price’s map shows that the water of the thoroughfare, between the main land and Piver’s island, was, in the year 1816, nearly fifty feet West of the mathematical line from C to A. That line, then, was at that time, so far as the map proves anything, the Western boundary of the defendant’slot, No. 111. The testimony of the Messrs. Davis is not very explicit, but -supposing it to be established that, in the year 1817, the earliest time to which it seems to refer, the water of the thoroughfare encroached upon the land, so as to come up to and be co-terminous with the line from C to A, it certainly could not have the extraordinary effect of attaching to the lot in question the right of alluvion, which it had never had before. That proposition was not even contended for in argument.
 

 The charge of his Honor applied to the condition of the Western boundary, as it existed when the lot was laid off and sold, and we are unable to find in the bill of exceptions the slightest proof that, at any time prior to the year 1817
 
 *239
 
 the mathematical line, from C to A, was co-terminous with the water mark, high or low, of the thoroughfare. His Honor ought, therefore, to have instructed the jury, that there was no evidence on which to raise the question of al-luvion in favor of the defendants, and that, consequently, he was to be confined to the mathematical line, from-C to A, as his Western boundary. For this error of the Court, in submitting a material fact in the cause to the jury, without any evidence to support it, the judgment must be reversed, and ,a
 
 venire de novo
 
 awarded.
 

 Judgment reversed, and a
 
 venire die novo.